UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHANNON HADLEY,

                Petitioner,               Case Number 09-CV-10297
                                         Honorable Mark A. Goldsmith

v.

SHIRLEE HARRY,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Shannon Hadley, presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions of armed robbery and possession of a firearm during the commission of a felony. Petitioner was found guilty of these crimes following a bench trial in the Wayne Circuit Court and was sentenced to 12-20 years for the armed robbery conviction and a consecutive two years for the firearm conviction. The petition asserts nine claims: (1) the trial court failed to suppress the in-court identification of Petitioner after a suggestive confrontation at the preliminary examination; (2) insufficient evidence was presented at trial to sustain Petitioner's convictions; (3) the prosecutor failed to disclose fingerprint analysis results, and defense counsel was ineffective when he failed to move to dismiss the case based upon the prosecutor's failure to produce this potentially exculpatory evidence; (4) Petitioner's trial was rendered unfair by the erroneous admission of prior bad acts evidence under Michigan Rule of Evidence 404(B); (5) Petitioner was denied the effective assistance of counsel

1

by his attorney's failure to investigate and move for a mistrial; (6) the prosecutor elicited false testimony from a witness; (7) the cumulative errors committed by the trial judge violated Petitioner's state and federal due process guarantee to a fair and impartial trier of fact; (8) Petitioner is entitled to resentencing where his sentence was based upon uncounseled convictions; and (9) Petitioner has shown cause and prejudice to excuse any procedural defaults. The respondent filed an answer to the petition arguing that Petitioner's claims were reasonably rejected by the state courts and that review of his claims is procedurally barred. The Court finds that none of Petitioner's claims has merit. The Court will therefore deny the petition on that basis.

## I.      Background

At Petitioner's bench trial, Charles Drake testified that he was at a self-service car wash on Michigan Avenue on the evening of December 28, 2002. While he was putting the finishing touches on his tires, a man tugged on his elbow and pointed a chrome-plated pistol at him. The man told Drake to give him money and his wallet or he would kill him. The man then took Drake's wallet out of his pocket while holding the pistol down at his side.

The man then told Drake to give him his car keys and, when Drake did, Petitioner threw them near a dumpster. Petitioner directed Drake to walk toward the street while he walked back towards the back of the car wash. Moments later, Drake heard a commotion on the corner. A man in the street identified himself as a police officer, and Drake told him he had just been robbed. Drake failed to identify anyone at a pretrial line-up procedure, but he identified Petitioner at the preliminary examination and at trial as the robber.

Sgt. Odell Godbold testified that he was on surveillance duty near the carwash because

2

several robberies had occurred there.  He saw an individual armed with a handgun approach a customer.  The man with the gun pointed it at the customer, and Godbold saw the man place his hand in the customer's pocket.  As the perpetrator walked away, Godbold started to pursue him on foot.  When the man was cornered by Godbold and another officer, Godbold saw him throw away the handgun and give himself up.  Godbold identified Petitioner as the man who was arrested at the scene, and that Petitioner had remained in his eyesight from the time of the crime until the arrest.  This testimony was corroborated by the testimony of other officers present at the scene.

Petitioner testified in his own defense.  He claimed that he had stopped on Michigan Avenue to urinate behind a vacant building when an  officer arrested him.

The trial court found Petitioner guilty of armed robbery and felony-firearm but acquitted him of the felon in possession of a firearm charge.  The court found that the entire episode was observed by police officers – from the robbery to Petitioner's arrest – and futher found the prosecution witnesses credible, while Petitioner's testimony was not believable.

The court subsequently sentenced Petitioner to 12-20 years imprisonment for the armed robbery conviction and a consecutive two years for the felony-firearm conviction.

Petitioner filed a claim of appeal with the Michigan Court of Appeals, raising the following claims:

> I. Defendant was denied his due process right to a fair trial where the court denied his motion to suppress the in- court identification and allowed the complainant to identify him in court, despite the fact that he did not definitively identify him in a lineup, and where thereafter he viewed him at a suggestive confrontation at the preliminary examination.
>
> II. Defendant's state and federal constitutional rights were violated when the evidence was insufficient when viewed in a light most favorable to the

3

prosecution and could not justify a reasonable person finding all the elements of the crime were established beyond a reasonable doubt
        .

III. Defendant's state and federal due process rights were violated when the fingerprint analysis was not turned over to defense counsel and defense counsel was ineffective when he failed to move to dismiss based upon the prosecutor's failure to produce potentially exculpatory evidence.

IV. Defendant was denied his state and federal constitutional right to a fair trial where the prosecutor referred to inadmissible 404(B) evidence involving a prior armed robbery by a vehicle like the one in which he was driving.

V. Defendant was denied his state and federal constitutional rights to effective assistance of counsel by his attorney's failure to investigate, bring a motion for mistrial and to dismiss.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions.  People v. Hadley, 2005 Mich. App. LEXIS 1143 (Mich. Ct. App. May 10, 2005). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, but it was denied by standard order.  People v. Hadley, 708 N.W.2d 404 (2006).

Petitioner subsequently filed a motion for relief from judgment in the trial court, raising several new claims.  On November 9, 2006, the trial court issued an opinion and order denying Petitioner's motion for relief from judgment on the ground that "defendant had not shown good cause for failure to raise the allegations in his appeal of right; nor had he shown actual prejudice. Michigan Court Rule 6.508(D)(3)."

Petitioner filed a delayed application for leave to appeal this decision with the Michigan Court of Appeals, raising the following claims in his brief:

I. Were Defendant's state and federal due process rights to a fair and impartial trial violated where the prosecutor failed to correct and/or bring to the court's attention that a state witness had testified falsely where knowledge of the false

statement was known or should have been recognized as false as early as the preliminary examination?  Additionally, was trial counsel ineffective when he failed to alert the court to this false testimony at trial?

II. Did the cumulative errors committed by the judge within the fact finding process violate Defendant's state and federal due process guarantee to a fair and impartial trier of fact in his bench trial?

III. Is Defendant entitled to resentencing where his current sentence was based upon multiple uncounseled convictions in direct violation of the Tucker-Moore ruling and Defendant's constitutional right to be sentenced based on accurate information? Additionally, was trial counsel constitutionally ineffective in failing to argue against these uncounseled convictions being used at sentencing?

IV. Has Defendant shown "good cause" and "actual prejudice" and thus entitled to relief from judgment pursuant to Michigan Court Rule 6.508(D)?

The Michigan Court of Appeals denied Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Hadley, No. 277368 (Mich. Ct. App. October 23, 2007).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, but it was also denied under Rule 6.508(D). People v. Hadley, 748 N.W.2d 805 (2008).

Petitioner then filed the instant application for habeas relief, asserting the same claims he presented to the state courts.

## II.      Discussion

### a.     Legal Standards

The amendments to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), circumscribe the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims.

<u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); <u>Franklin v. Francis</u>, 144 F.3d 429, 433 (6th Cir. 1998).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  <u>Wiggins</u>, 539 U.S. at 520-21 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); <u>see also West v. Seabold</u>, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result

6

different from [the Court's] precedent.

Williams, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 785-86 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than de novo review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." Renico v. Lett, --- U.S. ---, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010) (finding that the state court's

7

rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted).

### b.      Identification of Petitioner

Petitioner first asserts that the trial court erroneously allowed the victim to identify him at trial because the in-court identification was the result of a suggestive identification occurring at the preliminary examination. He also asserts, in a portion of his fifth claim, that his counsel was ineffective for failing to challenge the in-court identification on these grounds. The Michigan Court of Appeals rejected the claims on the merits, and Respondent asserts that habeas relief is barred under §2254(d) because the state court's adjudication of the claim was reasonable.

The Due Process Clause protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. Moore v. Illinois, 434 U.S. 220, 227 (1977). A conviction based on identification testimony that follows a pretrial identification procedure violates the defendant's constitutional right to due process "if the . . . procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). It is the likelihood of misidentification that violates a defendant's due process right. Neil v. Biggers, 409 U.S. 188, 198 (1972).

The Supreme Court has identified five factors to consider in determining the reliability of

8

identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. Id. at 199-200. A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. If a defendant meets his burden, the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. See United States v. Wade, 388 U.S. 218, 240 n.31 (1967); Johnson v. Warren, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. See United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992); Johnson, 344 F. Supp. 2d at 1090.

In rejecting Petitioner's argument on direct appeal, the Michigan Court of Appeals ruled as follows:

> Defendant first argues that he was denied his right to due process and a fair trial when the trial court denied his motion to suppress the victim's identification of him at the preliminary examination, because it was unduly suggestive and there was no independent basis for the victim's in-court identification of him at trial. An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. People v. Williams, 244 Mich. App. 533, 542 (2001). In order to challenge an identification on the lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. Id. If the trial court finds that the

9

procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure. Id. at 542-543.

We review de novo a trial court's ultimate decision regarding a motion to suppress. People v. Davis, 250 Mich. App. 357, 362 (2002). However, we review a trial court's findings of fact from a suppression hearing for clear error. Id. A finding of fact is clearly erroneous if, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been made. Id.

There is no per se rule that all in-court identifications at preliminary examinations are impermissibly suggestive. People v. Fuqua, 146 Mich. App. 133, 143 (1985), overruled in part on other grounds in People v. Heflin, 434 Mich. 482, 498 (1990); People v. Johnson, 58 Mich. App. 347, 353 (1975). Instead, we examine the totality of the circumstances to determine whether the victim's identification of defendant at the preliminary examination was unduly suggestive. People v. McElhaney, 215 Mich. App. 269, 287 (1996).

Here, the victim had the opportunity to observe defendant at close proximity during the robbery. Additionally, the victim explained that he failed to positively identify defendant at the live lineup because he believed that the perpetrator would be wearing the same clothing that he was wearing during the incident. The victim positively identified defendant at the preliminary examination, less than one month after the incident. Moreover, the victim explained that when he was robbed, the perpetrator had his head down, and had the hood of his jacket cinched around his face so that only the part of his face from the top of his eyebrows to his moustache was in view. The victim then explained that at the preliminary examination, defendant's head was tilted down, and it was at that point that he recognized defendant as the perpetrator. The victim confirmed that before the preliminary examination he was not told that the perpetrator would be in court, and that he did not identify defendant as the perpetrator solely because defendant was with an attorney.

Contrary to defendant's assertion on appeal, we find that the instant case is distinguishable from People v. Solomon, 47 Mich. App. 208, 216-221 (1973) (Lesinski, C.J., dissenting), adopted at 391 Mich. 767 (1974). In Solomon, the identifying eyewitness was told by the police before the preliminary examination that "they had the guy," and the preliminary examination did not occur until two and a half years after the incident. Solomon, supra at 211-212. In this case, however, the victim was not told before the preliminary examination that the perpetrator would be in court, and the preliminary examination occurred less than

10

one month after the incident.  Under the totality of the circumstances, defendant's right to due process was not violated by the victim's identification of him at the preliminary examination. McElhaney, supra at 287.

Because there was no impropriety in the victim's pretrial identification of defendant at the preliminary examination, there was no need to establish an independent basis for an identification. Id. at 288.  We find that the trial court did not clearly err in its determination that the victim's pretrial identification of defendant at the preliminary examination was not tainted by improper procedure and was not unduly suggestive. Id. at 286.  Because defendant was unable to show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification, the trial court properly denied defendant's motion to suppress. Davis, supra at 362; Williams, supra at 542.

Hadley, 2005 Mich. App. LEXIS 1143, at *1-5.

The Court cannot find that this determination contravened or unreasonably applied federal law.  Petitioner argues that his identification at the preliminary examination must have been suggestive because the victim was unable to identify him at a pretrial line-up procedure. But even if the preliminary examination confrontation constituted an unduly suggestive identification procedure, the five Biggers factors weigh in favor of the reliability of the identification.  "If an identification is reliable, it will be admissible even if the confrontation was suggestive." Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005).

First, the witness had an adequate opportunity to view the criminal at the time of the crime.  The perpetrator was close enough to the victim to point the gun at his face and reach into his pocket.  Though it was nighttime, the witnesses testified that the streets and carwash were well lit.  The two men had time to exchange a few words.  When the perpetrator asked for the victim's money, the victim replied that he did not have any.  When the perpetrator removed the

11

wallet and the twelve dollars inside it, he asked whether that was all he had.  The victim replied that it was all he had because it was just after Christmas.  When the perpetrator began to walk away, the victim asked for his driver's license back.  This exchange gave the victim and an adequate opportunity to observe the perpetrator at the time of the crime.  Second, the witness was paying a great deal of attention at the time of the crime.  As the victim of the crime, the identifying witness was focused on the perpetrator.  See, e.g., United States v. Crozier, 259 F.3d 503, 511 (6th Cir. 2001).  Third, the witness did not inaccurately describe Petitioner.  While it is true that he failed to identify Petitioner at the line-up, the description of his clothes matched what Petitioner was wearing when he was caught minutes after the crime.  Fourth, the victim expressed a high level of certainty when identifying the suspect.  He stated that he was "sure" of his identification.     Finally, only a short length of time elapsed between the time of the crime and the confrontation.  The preliminary examination occurred within a month of the crime. Compare Holland v. Wolfenbarger, 2010 U.S. Dist. LEXIS 129461, *24-25 (E.D. Mich. Dec. 8, 2010) (delay of a few weeks not substantial); Chandler v. Sherry, 2010 U.S. Dist. LEXIS 121611 ( E.D. Mich. Nov. 17, 2010) (two-week delay between crime and lineup not substantial).  In sum, the relevant factors reasonably support the state court's determination.

Furthermore, because a police officer watched Petitioner commit the crime and never lost sight of him until after he was arrested, there is no real question about his identity as the perpetrator.  Any error in allowing the testimony, therefore did not have a substantial impact on the outcome of the trial.  Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  In other words, the evidence of Petitioner's guilt was

overwhelmingly proved by the testimony of the officers alone, which the trial court sitting as finder of fact found to be credible.

Petitioner's related ineffective-assistance-of-counsel claim is also without merit. Because the identification testimony was admissible, Petitioner's counsel did not perform deficiently by failing to object to it. Counsel cannot be deemed ineffective for failing to raise a meritless objection. See Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000).

### c.      Sufficiency of Evidence at Trial

Petitioner claims in his second ground for relief that insufficient evidence was presented at trial to sustain his conviction for armed robbery. Petitioner argues that the prosecutor failed to prove his identity as the perpetrator of the crime.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364(1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"

13

Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. Id. at 788. Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Id. at 788-89. The Court does not need to be convinced that Petitioner is actually guilty beyond a reasonable doubt. Walker v. Russell, 57 F.3d 472, 475 (6th Cir. 1995).

The Michigan Court of Appeals addressed Petitioner's sufficiency-of-the-evidence claim and rejected it on the merits as follows:

> Defendant next argues that there was insufficient evidence to sustain his conviction for armed robbery. Specifically, defendant challenges the sufficiency of the evidence regarding his identity as the robber. "[A] challenge to the sufficiency of the evidence at a bench trial is reviewed by considering the evidence presented in a light most favorable to the prosecution and determining whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." People v. Daniels, 172 Mich. App. 374, 378 (1988).
>
> Identity is always an essential element in a criminal prosecution, People v. Oliphant, 399 Mich. 472, 489 (1976), and the prosecutor must identify the accused as the person who committed the alleged offense. People v. Kern, 6 Mich. App. 406, 409-410 (1967). "Identity may be shown by either direct testimony or circumstantial evidence which gives the [trier of fact] an abiding conviction to a moral certainty that the accused was the perpetrator of the offense." Id. Defendant argues that the evidence presented at trial concerning his identity as the robber was insufficient because the victim was unable to identify him at the live lineup, and because of discrepancies between the testimony of the victim and Sergeant Odell Godbold, who witnessed the robbery.
>
> Here, the victim testified that after defendant robbed him at a carwash, defendant

14

threw the victim's car keys near a dumpster, and ordered the victim to start walking away from the scene out to the main street.  When the victim reached the middle of the street he saw defendant turn and start walking down the back side of the carwash.  At that point, the victim heard a commotion near the corner and heard someone say "we got him."  Sgt. Godbold testified that he witnessed the entire robbery, and pursued defendant from the moment he left the victim to the moment he was apprehended.  Godbold maintained that he never lost sight of defendant.  Defendant, on the other hand, testified that he was urinating near the corner at the time he was arrested.

On appeal, defendant posits that the identity of the perpetrator was not proven beyond a reasonable doubt because of the discrepancy between the testimony of the victim and Godbold.  That is, defendant argues that he could not have been the perpetrator if the victim could see the perpetrator at the same time he heard a commotion – Godbold apprehending defendant near the corner.  However, the prosecution argued in closing that the commotion the victim heard was likely the arrest of defendant's friend, Donyell Woods.

Defendant also takes issue with alleged discrepancies between the descriptions of the perpetrator's clothing given by the victim and Godbold.  The victim testified that the perpetrator was wearing a white or light colored hooded jacket with dark patches on the sleeves.  Godbold testified that defendant was wearing a black and white jogging suit at the time of his arrest.  Defendant testified that he was wearing jogging pants and a t-shirt at the time of his arrest; the matching jacket, which was black and white striped, was recovered from Woods' car.

The trial court noted that this case came down to the issues of identification and credibility.  In making its determination that defendant was guilty of the charged offenses, the trial court noted that it found Godbold to be a credible witness and assigned particular weight to Godbold's testimony that he observed the entire incident and did not lose sight of defendant from the time of the robbery until the time defendant was apprehended. The trial court noted that Godbold's testimony corroborated the victim's account of the incident, and specifically commented on the similarity in details with which both witnesses described the incident.  The trial court also found the description of the perpetrator's clothing given by the victim and Godbold to be largely consistent.  The trial court commented that it did not find defendant to be a credible witness, and disbelieved defendant's testimony that he was merely urinating at the time of his arrest and was only wearing a t-shirt outside in late December.

The trial court, sitting as trier of fact, was entitled to judge the credibility of the

witnesses and determine the weight to give to the evidence. <u>People v. Marji</u>, 180 Mich. App. 525, 542 (1989). Although there appears to be some question concerning how the victim had the perpetrator in sight at the time he heard a commotion--which could have been the apprehension of either defendant or his friend--the trial court was satisfied that defendant was the perpetrator on the basis of Godbold's testimony that he did not lose sight of defendant from the time of the robbery until the time he was apprehended. Moreover, we will not interfere with the trier of fact's role of determining the weight of the evidence or deciding the credibility of the witnesses, and all conflicts in the evidence must be resolved in favor of the prosecution. <u>People v. Fletcher</u>, 260 Mich. App. 531, 561-562 (2004). Therefore, we conclude that the evidence presented in this case was sufficient to support defendant's convictions.

<u>Hadley</u>, 2005 Mich. App. LEXIS 1143, *9-10 (footnotes omitted).

The state appellate court did not unreasonably apply the clearly established standard when it rejected Petitioner's claim. The court recited the correct standard and applied it to the facts of Petitioner's case in an objectively reasonable way. Viewed most favorably to the prosecution, the evidence showed that Sgt. Godbold witnessed the entire criminal episode and never lost site of the perpetrator from the moment he confronted the victim until after he was arrested. Petitioner's challenge to Godbold's credibility was a matter for the trial judge, sitting as fact-finder, to resolve – it does not implicate the legal sufficiency of the evidence. <u>Matthews</u>, 319 F.3d at 788.

### d.     Fingerprint Analysis

Petitioner asserts in his third claim that the prosecutor failed to reveal potentially exculpatory records from a fingerprint analysis performed on the handgun recovered at the scene. He also asserts in the remaining portion of his fifth claim that his counsel was ineffective for failing to move to dismiss the case on this basis. Respondent asserts that review of the claim is

barred by Petitioner's failure to raise the issue at trial.

Because these claims are clearly without merit, the Court will reject them on that basis without resolving the procedural default issue.  See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings).

The Due Process Clause requires the state to disclose exculpatory evidence to the defense.  See Brady v. Maryland, 373 U.S. 83 (1963).  "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Thus, in order to establish a Brady claim, Petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to Petitioner and not available from another source; (2) the evidence was favorable to Petitioner; and (3) the evidence was material to the question of Petitioner's guilt.  See Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000); Luton v. Grandison, 44 F.3d 626, 628-29 (8th Cir. 1994).  Petitioner bears the burden of establishing each of these three elements.  See Carter, 218 F.3d at 601.

With respect to Petitioner's alternate claim that his counsel was ineffective for failing to move to dismiss the case, to show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S.

17

668, 687 (1984).  Petitioner must show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland,

466 U.S. at 687.

The Michigan Court of Appeals rejected Petitioner's claims with these words:

Defendant next argues that he was denied his right to due process and a fair trial when the prosecution failed to provide defense counsel with the results of fingerprint analysis of the alleged robbery weapon.  Whether defendant was denied his due process right to information is a question of law, which we review de novo on appeal.  See People v. Sierb, 456 Mich. 519, 522 (1998).  However, because defendant failed to raise the issue below, our review is limited to plain error affecting defendant's substantial rights. People v. Carines, 460 Mich. 750, 763-764 (1999).

A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt as to the defendant's guilt.  People v. Stanaway, 446 Mich. 643, 666 (1994), citing Brady v. Maryland, 373 U.S. 83 (1963).  In order to establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. People v. Lester, 232 Mich. App. 262, 281 (1998).

Here, the record reveals that before trial, in response to defendant's motion for additional discovery, the parties stipulated to, and the trial court subsequently ordered, a fingerprint analysis of the alleged robbery weapon.  The trial court also ordered that defense counsel be provided with a report of the results of the analysis.  However, the record of the final pretrial conference reveals that at that time, defense counsel had not yet received such information.  The prosecutor indicated on the record that he would make an inquiry and convey his findings to defense counsel.  However, there is no further reference in the lower court record to fingerprint analysis being performed and/or the results of any such analysis.  As a result, defendant is unable to prove that the prosecutor possessed any fingerprint evidence, let alone evidence that was favorable to him.  Consequently, defendant is unable to establish a Brady violation.  Defendant has failed to demonstrate plain error; therefore, he is not entitled to relief on this unpreserved issue.

> Defendant alternatively argues that defense counsel was ineffective for failing to obtain the fingerprint analysis results; however, as noted above, it is unclear whether such an analysis was ever performed. A claim of ineffective assistance of counsel cannot be predicated on the failure to procure evidence which does not exist and which has not been shown to have any potential to affect the outcome of the trial; therefore, defendant is not entitled to relief on this issue. People v. Goodin, 257 Mich. App. 425, 433 (2003).

Hadley, 2005 Mich. App. LEXIS 1143, *10-13.

The state appellate court reasonably rejected Petitioner's claims. The record shows that defense counsel asked for a fingerprint analysis of the handgun prior to trial. The trial court then entered a stipulated order for the fingerprint analysis to be performed and for the results to be sent to the attorneys. When no results were produced by the appointed date, defense counsel raised the issue at a pretrial hearing. The prosecutor responded that he would enquire about the analysis and contact defense counsel with the results. There is no further mention of the request for the fingerprint analysis in the record. But during closing argument, defense counsel stated no evidence was presented that Petitioner's fingerprints were recovered from the firearm.

The claims are undermined because there is no basis for concluding that any exculpatory fingerprint analysis exists. It does not follow from the fact that no mention of the results of the analysis was made after the pretrial, that results were not handed over to defense counsel. Indeed, the record shows that defense counsel did not ignore this issue: he filed the motion for the analysis to be conducted in the first place, and then he complained when the results were not received on time. There is presumption that counsel provided effective assistance, Strickland, 466 U.S. at 690, and so it must be assumed absent evidence to the contrary that he received a

satisfactory response from the prosecutor following the pretrial.  Petitioner has not proffered any evidence to this court, nor did he offer any to the state courts, that his trial counsel never received a response from the prosecutor regarding the analysis.

Nor is Petitioner entitled to an evidentiary hearing to support his claim in this Court. Under 28 U.S.C. § 2254(e)(2), a petitioner "has failed to develop" a factual basis of a claim in state court, and therefore may not expand the record in a habeas proceeding, where there is "a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." Michael Williams v. Taylor, 529 U.S. 420, 432(2000).  Diligence requires that the prisoner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Id. at 437.  Although Petitioner requested an evidentiary hearing in his motion to remand filed in the Michigan Court of Appeals, the request was not made in "the manner prescribed by state law." Michigan Court Rule 7.211(C)(1) requires that a motion for remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing, neither of which Petitioner included in his application.  See Michigan Court Rule 7.211(C)(1).  If defense counsel failed to receive a response from the prosecutor, a diligent litigant would have obtained an affidavit attesting to that fact.   Therefore, Petitioner is barred by § 2254(e)(2) from obtaining an evidentiary hearing in federal court.

Furthermore, the Supreme Court recently held: "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1400, 179 L. Ed.

2d 557 (2011). Based on the existing record, Petitioner cannot support his claims that the results of the fingerprint analysis were not communicated to defense counsel or that his counsel was ineffective in how he handled the matter.

For these reasons, Petitioner has not demonstrated that the state court adjudication of his Brady or ineffective-assistance-of-counsel claims resulted in an unreasonable application of clearly established Supreme Court law.

### e.    Testimony Regarding Prior Bad Acts

Petitioner next asserts that his right to a fair trial was violated when the trial court allowed a police officer to testify that he observed a vehicle matching the description of one used in an earlier robbery near the carwash at the time of the instant robbery. Petitioner reasons that the testimony amounted to the improper admission of "prior bad acts" evidence under Michigan Rules of Evidence 404(b) because it suggested that Petitioner was involved in the prior robbery. Respondent correctly argues that this claim does not provide a cognizable ground for relief.

Petitioner has not presented, and this Court has not found, any Supreme Court precedent holding that a state court violates due process when it properly admits evidence of a criminal defendant's other bad acts. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); see also Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials). As there is no "clearly established federal law" to which the state court's decision could be "contrary," within the meaning of section 2254(d)(1), Petitioner's fourth claim does not entitle him to habeas relief.

### f.      Ineffective Assistance of Counsel

Petitioner's fifth claim–alleging ineffective assistance of trial counsel has already been rejected for the reasons set forth above.

### g.      Truthfulness of Witness Testimony

Petitioner's sixth claim asserts that the prosecutor allowed a witness to testify falsely at trial.  Respondent asserts that review of this claim, as well as his remaining claims, is barred because the claims were rejected by the state courts based on a procedural rule requiring the claims to have been raised on direct review.  See Michigan Court Rule 6.508(D)(3).  Because the claims are clearly without merit, the Court will reject them on that basis without resolving the procedural default issue.  Lambrix, supra.

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." Giglio v. United States, 405 U.S. 150, 153 (1972) (internal quotation marks omitted).  It is well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnote omitted); see also Napue v. Illinois, 360 U.S. 264, 271 (1959); Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998).  A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury.  See Napue, 360 U.S. at 270.  Mere inconsistencies in witness testimony do not establish the knowing use of false testimony by the prosecutor.  Coe, 161 F.3d at 343.  Nor does the fact that a witness contradicts himself or another witness or

22

changes his story establish perjury.  Malcum v. Burt, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing Monroe v. Smith, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

Petitioner asserts that there were differences in the description of the perpetrator given by Sgt. Godbold and the victim, and that therefore one of them must have been testifying falsely. At trial, the victim described Petitioner as wearing "either white or light colored jacket, wintertime, with a hood that had dark sleeves either back or blue. . . . There were black patches coming down the side of it."  Trial Tr. at 27.  Godbold's police report indicated that Petitioner was wearing a "black and white jogging suit" when he was arrested.  While the descriptions were different, they were not inconsistent.  Both witnesses essentially testified that Petitioner was wearing a two-toned jacket that was partially white and partially dark colored.  The victim simply gave a more detailed description that was consistent with Godbold's description. Petitioner has not come close to establishing that the witness's testimony was inconsistent, let alone that the prosecutor knowingly presented false testimony.

### h.    Bias of Trial Court

Petitioner's next claim asserts that the trial court made a number of factual errors when, sitting as trier of fact, it rendered its verdict.  He claims that the errors show that the court the court was not impartial.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'"  Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  While state law requires a trial court to make detailed factual findings following a bench trial, see Mich. Court Rule 6.403, there is no such federal constitutional requirement.

Therefore, the trial court judge's allegedly incorrect findings of fact at the bench trial cannot support a claim for habeas relief because there is no Supreme Court decision that requires a trial court judge to make specific findings of fact at a bench trial in order to satisfy constitutional concerns. See Wofford v. Straub, 27 Fed. Appx. 517, 520 (6th Cir. 2001).

As for the claim that the findings reveal that the trial court was biased, unfavorable judicial rulings almost never constitute judicial bias. Liteky v. United States, 510 U.S. 540, 555 (1994). A review of the trial court's findings of fact reveals that it fairly and justly weighed the evidence presented at trial when it rendered its decision. The colloquy does not reveal any bias.

### i.    Prior Convictions Used in Determining Sentencing

Petitioner next asserts that the trial court erroneously considered prior uncounseled convictions in determining his sentence.

In Townsend v. Burke, 334 U.S. 736 (1948), the Supreme Court held that it violates a criminal defendant's right to due process to sentence the defendant "on the basis of assumptions concerning his criminal record which were materially untrue." Id. at 741. In Gideon v. Wainwright, 372 U.S. 335 (1963), the Court held that the Sixth Amendment right to counsel makes it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. In Burgett v. Texas, 389 U.S. 109, 114 (1967) the Court extended its holding in Gideon, concluding that  a conviction obtained in violation of Gideon cannot be used to either support guilt or enhance punishment for another, subsequent offense. See Burgett, 389 U.S. at 115. Extrapolating from both Townsend and Gideon/Burgett, the Court held in United States v. Tucker, 404 U.S. 443 (1972), that a sentencing court's reliance on convictions which

24

are "wholly unconstitutional under <u>Gideon</u>" results in a "sentence founded at least in part upon misinformation of a constitutional magnitude" of the type prohibited by <u>Townsend</u>. <u>Tucker</u>, 404 U.S. at 447. It is petitioner's burden, however, to show both that he was without counsel for these prior convictions, and that the presence of counsel was not validly waived. <u>See</u> <u>Hobson v. Robinson</u>, 27 Fed. Appx. 443, 445 (6th Cir. 2001) (citing <u>Parke v. Raley</u>, 506 U.S. 20, 28-34 (1992)).

Petitioner has made no such showing. The presentence investigation report does not indicate that Petitioner was not provided with counsel for the prior convictions. The preparer of the report merely states that it was "unknown" whether Petitioner had counsel. The record also does not reveal whether there had been any waiver of counsel, if indeed Petitioner did not have counsel. Because Petitioner has failed to demonstrate that the prior convictions were obtained without the benefit of counsel or that he did not validly waive his right to counsel, he has not established entitlement to habeas relief on this claim.

### j.    Procedural Default

Petitioner's final claim asserts that he can demonstrate cause and prejudice to excuse any procedural default. Because the Court has rejected each of his substantive claims on the merits, this assertion is moot.

### III.    Conclusion

Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. Accordingly, it is ordered that the petition for a writ of habeas corpus is denied.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may be issued only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted). The Court concludes that reasonable jurists would not debate its conclusions. Thus, the Court denies a certificate of appealability. Further, Petitioner is granted leave to appeal in forma pauperis.

SO ORDERED.

Dated: March 22, 2012                    s/Mark A. Goldsmith
       Flint, Michigan                   MARK A. GOLDSMITH
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 22, 2012.

                                         s/Deborah J. Goltz
                                         DEBORAH J. GOLTZ
                                         Case Manager

26